UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
YAKIM MANASSEH JORDAN,

        Plaintiff,

    -against-

SELESTER STEWART, JR. and GEORGIA HEALTH
AND ASSOCIATES, LLC.

        Defendants.
------------------------------------------------------------------------X

Case No.

**COMPLAINT AND
JURY DEMAND**

Plaintiff, Yakim Manasseh Jordan, by and through his undersigned counsel, as and for his

complaint, hereby alleges:

### INTRODUCTION

1. This is an action for breach of contract, unjust enrichment, and fraudulent

   misrepresentation by and between Yakim Manasseh Jordan ("Jordan" or "Plaintiff") and

   Selester Stewart Jr., individually ("Stewart") and Georgia Health and Associates, LLC

   ("GHA") (collectively, "Defendants").

2. Plaintiff and Defendants contracted for Plaintiff to purchase 100% ownership of GHA.

   Upon information and belief, Stewart knowingly made warranties he knew to be false,

   breached the purchase agreement between the parties, and further retained the purchase

   price without cause.

### JURISDICTION and VENUE

3. This court has diversity jurisdiction over this action under 28 U.S.C. §1332(a), as the

   Plaintiff is diverse from each and every Defendant, and the amount in controversy is

   greater than $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that Plaintiff resides and conducts business in this District and/or this is the District in which a substantial part of the events or omissions giving rise to the claims hereinafter set forth occurred. Further, the Plaintiff maintains another principal office in New York City.

## PARTIES

5. Plaintiff Yakim Manasseh Jordan is an individual residing in the State of New York.

6. Defendant Georgia Health and Associates, LLC is the operator of a licensed Medicaid mental health clinic and treatment center, which was previously located at 1618 Thompson Avenue, East Point, Georgia 30344, with a Federal Tax Number 27-0550855 and a Medicaid Number 322486618A.

7. Defendant Selester Stewart, Jr. is a resident of the State of Georgia and is the former sole owner and sole Managing Member of GHA, with an address located at 5240 Snapfinger Park Drive, Suite 140, Decatur, Georgia 30035.

8. In his capacity as the sole owner of GHA, Stewart agreed to sell his 100% ownership of GHA to Jordan. However, upon information and belief, Stewart has failed to, and never intended to, transfer full ownership of GHA pursuant to the Agreement, and as detailed herein.

## FACTS

9. In May 2012, Plaintiff commenced discussions with Defendant with respect to the purchase of GHA.

10. In August of 2012, Robert A. Seibel, Esq., Jordan's business attorney, began discussions with Defendants' attorney, Walter Holton, Esq., with regards to Jordan's purchase of GHA.

2

11. These negotiations resulted in the preparation of a Deal Memorandum, which outlined the proposed terms and conditions for the purchase of GHA by Jordan, which further led to a proposed Purchase Agreement ("Agreement").

12. From this point until about November 2012, Holton and Seibel exchanged numerous emails and engaged in numerous telephone conversations concerning the details of the Agreement.

13. Ultimately, Holton and Seibel, after exchanging at least four drafts, finalized the Agreement, which was eventually executed, in counterparts, by both Jordan and Stewart (on behalf of GHA). An executed copy of this Agreement is annexed hereto as Exhibit A.

14. At the time of the Agreement, and during no time thereafter, despite numerous requests from Seibel, Stewart and GHA have failed to turn over to Plaintiff the corporate books and records for GHA, including the LLC organization book, which are still being requested by Plaintiff.

15. At the time the Agreement was executed, Stewart was the sole and 100% owner of GHA. Further, the Agreement specified that Jordan was purchasing 100% ownership of GHA.

16. The total purchase price specified in the Agreement was $250,000.00, of which $150,000.00 was paid to GHA upon the execution of the Agreement, and the remaining balance of $100,000.00 was paid to Stewart within thirty (30) days after execution, as stipulated in the Agreement. Copies of the bank checks are annexed hereto as Exhibit B.

17. The Agreement also provided that Jordan was to begin operating GHA from January 1, 2013, and indeed, Jordan commenced operations and billing as of that date.

18. At the same time, Defendants were still registered with Medicaid for purposes of obtaining reimbursement for any prior billings, and all reimbursements were paid to a

3

bank account controlled by Defendants. Seibel was made a co-signatory on this account, and as such, he immediately withdrew the amounts deposited each week from this account, and re-deposited them into a Jordan-controlled account.

19. Sometime in January 2013, Holton advised Seibel by email to contact Medicaid to obtain advice from them on effectuating the change of ownership. He specifically emailed to Seibel the name "Shirley Kimble," an administrator at Medicaid.

20. Neither Stewart nor Holton made any statements to Medicaid or to the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD"), written or verbal, about the change of ownership of GHA at the time the Agreement was being executed, nor at any time thereafter. Upon signing the Agreement, Jordan believed, and the contract was clear, that he was the rightful new owner of GHA.

21. In January of 2013, Seibel called and spoke with Ms. Kimble at Medicaid, who verbally instructed him that, as the change of ownership is only a "stock sale," all that was required was for Medicaid to be notified of Jordan's (the Purchaser) Social Security Number and Date of Birth and the Federal Tax ID Number and Medicaid Provider Number of GHA.

22. On February 8, 2013, Seibel submitted a letter to the Secretary of State of Georgia advising of the change of ownership of GHA, as Ms. Kimble had instructed. Three days later, on February 11, 2013, Seibel submitted a Certificate of Amendment for GHA reflecting the change of ownership to the Secretary of State of Georgia, which is registered by them. They subsequently returned an invoice dated March 13, 2013, with the following information: Certificate #13508572; Fee $50.00; Entity Control 09049768.

23. On March 28, 2013, Seibel submitted a letter to "HPES Provider Enrollment" by certified

4

mail, as per the instructions listed in the Medicaid guidelines report found online, advising of the new bank account for GHA and for the new account information, in addition to the GHA office relocation address.

24. The next day, Seibel submitted a letter to "HP Enterprise Services," which was to advise Medicaid of the change of ownership of GHA; it provided Jordan's name, social security number, date of birth, and new bank account information. It further instructed that all future Medicaid reimbursement money for GHA billings should be paid into this new account.

25. On March 30, 2013, Seibel, in good faith, believed he had properly notified Medicaid of the change of the stock sale ownership of GHA and had fulfilled the requirements of Medicaid, and simply awaited their approval of the change. A few weeks later, in early April, 2013, Seibel was notified by Camille Richins, an administrator with the DBHDD, which, as she indicated, is also involved with Medicaid, stating that additional information on the stock sale change of ownership of GHA needed to be filed with the DBHDD, and provided an April 30, 2013 deadline for filing.

26. As an additional filing was required by the DBHDD, this constituted a blatant Breach of Warranty under the Agreement's Section 9(f), "Representations & Warranties," as Defendants had failed to notify Medicaid of the change in ownership which resulted in Jordan's application not being approved as Medicaid continued to believe that Stewart was still the sole owner/operator of GHA.

27. Upon information and belief, all correspondence, communications, and reimbursed payments continued to be directed to Stewart by Medicaid personnel.

28. From January 1, 2013 through June 30, 2013, it appears that Stewart consciously and

5

intentionally concealed all of his dealings with Medicaid and DBHDD, both verbal and in writing, from Jordan, his employees, representatives and even his lawyers while, at the same time, denying Jordan the opportunity to be the sole owner and operator of GHA from December 27, 2013 and thereafter.

29. As Stewart remained on the books of Medicaid as the sole owner of GHA, Jordan's name could not be added to a new bank account – as Medicaid continued to make payments to Stewart's account – and he refused to cooperate in allowing Jordan to open a new account because Stewart took no corrective action to properly inform Medicaid and DBHDD that Stewart had sold GHA to Jordan on December 27, 2012.

30. From April until June 2013, Stewart continued to fraudulently represent to Medicaid that he was the sole owner of GHA – receiving all Medicaid information, emails, etc., including appearing at an audit of GHA by Medicaid, an event which Stewart failed to disclose to Jordan.

31. On April 29, 2013, Seibel prepared and submitted, by overnight mail, an Application with supporting documents to the DBHDD. Supplementary documents are listed in the DBHDD guidelines for Medicaid clinics that are only renewing their existing license. However, clinics requesting a new Medicaid license were required to file a much more elaborate application to the DBHDD, with considerably more supporting documents.

32. Upon receipt of these documents, DBHDD was clearly confused, as Jordan is in possession of an April 29, 2013 email from Richins to Ms. Gail Dudley (one of Stewart's employees) about Richins being confused regarding who owns GHA. Specifically, Richins stated "I am confused. Who has the authority? Our records show that this agency is also owned by Selester Stewart. Please advise."

6

33. Subsequently, Dudley responded on April 30, 2013 as follows:

> Georgia Health & Associates was recently sold and the new
> owner/attorney went through DCH; however, if you have not
> received any notification from the new owner, it appears they have
> not completed the necessary procedures that is required by
> DBHDD to finalize the transition. Please inform us as to what
> should be our next steps.

34. This was in spite of the fact that Section 9(f) of the Agreement states that the Seller
(GHA and/or Stewart) warranted that no other governmental agency approval, federal or
state, would be required for Jordan to carry on the business of GHA. Clearly, this was not
the case, as approval by the DBHDD was also mandated, and never mentioned in the
Agreement.

35. On May 10, 2013, Brenda Woodard (Director of Legal Services for the DBHDD),
emailed Richins and several others to ask whether a change of ownership was submitted
and approved.

36. From May through July 2013, Seibel called Richins at least a dozen times seeking to
learn the status of the GHA Application – only to be told that the matter was referred to
the DBHDD legal department. No response was received from the legal department, and
Seibel attempted to contact them, but without a phone number or individual to call, he
was unable to obtain any information.

37. On June 26, 2013, Richins sent an email to Stewart indicating that during the course of
the APS audit held the week before, that Stewart indicated he would be shutting down
GHA due to changes in Medicaid services. It is clear from this correspondence that
Stewart knowingly misled all parties, including the DBHDD, at least until July 2, 2013. A
copy of this email is annexed hereto as Exhibit C.

7

38. On July 2, 2013, Stewart wrote a letter, on GHA letterhead, to the DBHDD, advising them that he was cancelling his contract, and signed the letter as the CEO of GHA. A copy of this letter is annexed hereto as Exhibit D.

39. On July 7, 2013, Seibel received a letter from the DBHDD informing him that the GHA Application had been rejected.

40. As result of GHA's Application having been denied and Stewart advising Medicaid that he was not renewing his contract with Medicaid, Jordan was forced to close down GHA.

41. At the time of the closure, GHA was serving 150 patients and billing at least $25,000 per week. From January 2013 through July 2013, total GHA billings were approximately $400,000.00. After salaries, office rent, expenses, telephone, television airtime and production, promotion and advertising, and other necessary expenses, GHA showed a net loss of $72,000.00.

42. An initial investigation has revealed that on a weekly basis, anticipated lost GHA billings would amount to at least $25,000.00, although it is reasonable to assume that this figure would increase in time, as more patients would be added.

43. As a result thereof, the total damages as a result of Defendants' actions amount to no less than:

    a. $250,000.00 paid for GHA under the Agreement;

    b. $25,000.00 lost billings each week beginning July 1, 2013;

    c. $10,000.00/month salary expenses to the staff of GHA from July 1, 2013 to the present.

    d. Overhead expenses, including rent to maintain the GHA office of at least $2,800.00 per month beginning July 1, 2013, as well as additional miscellaneous

office expenses of $3,000.00 per month.

e. Legal fees to date of more than $60,000.00 by local administrative counsel in Atlanta; and

f. Additional continuing legal fees paid to in-house counsel of $1,500.00 per month and to retain undersigned counsel.

## AS AND FOR A FIRST CLAIM
### Breach of Contract

44. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

45. As stated above, Defendants breached the terms of the Agreement by failing to transfer Stewart's 100% ownership of GHA to Jordan.

46. Defendants further breached the terms of the Agreement by warranting that no other federal or state governmental agency approval would be required for Jordan to carry on the business of GHA, when in fact, approval from the DBHDD was required.

47. Due to Defendants' breach, Plaintiff has lost substantial sums, including the purchase price paid to Defendants, overhead expenses, salary expenses, lost billings and substantial legal fees. By reason of the foregoing, Plaintiff has been damaged.

## AS AND FOR A SECOND CLAIM
### Unjust Enrichment

48. Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs as if set forth at length herein.

49. Defendants agreed to sell GHA to Plaintiff for the sum of $250,000, which was paid in full by Plaintiff.

50. Due to Defendants breaches, as detailed above, Defendant has failed to uphold their duties under the terms of the Agreement, but has retained and refuses to repay the

$250,000 and all GHA billings that were wrongfully deposited into Defendants' bank account.

51. By reason of the foregoing, Plaintiff has suffered damages.

<div align="center">

### AS AND FOR A THIRD CLAIM
### Fraudulent Misrepresentation

</div>

52. Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs as if set forth at length herein.

53. As stated above, Defendants breached the terms of the Agreement by warranting that no other federal or state governmental agency approval would be required for Jordan to carry on the business of GHA, when in fact, approval from the DBHDD was required.

54. Upon information and belief, at all times relevant to this action, Defendants were fully aware of the fact that DBHDD approval was required and fraudulently misrepresented to Plaintiff that no such approval was required with the intention of using that misrepresentation to induce Plaintiff to enter into the Agreement.

55. Furthermore, Defendants failed to take all necessary steps to ensure that Plaintiff received complete transfer of ownership as well as failing to notify the proper governmental authorities of the change in ownership and other requirements.

56. Plaintiff relief on this misrepresentation to his detriment.

57. By reason of the foregoing, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, Yakim Manasseh Jordan, demands judgment against the Defendants Selester Stewart Jr., and Georgia Health and Associates, LLC, as follows:

A.      As to the first claim, damages in an amount not less than $ 1,250,000;

B.      As to the second claim, damages in an amount not less than $1,250,000;

C.   As to the third claim, damages in an amount not less than $1,250,000;

D.   Compensatory, special, and punitive damages as may be determined by the Court; and

E.   Award plaintiff such other and further relief as this Court deems to be reasonably just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands Trial by jury in this action of all issues so triable.

Dated: New York, New York
       June 11, 2014

HANTMAN & ASSOCIATES

By_____
Robert L. Hantman, Esq.
Shirin Movahed, Esq.
Attorneys for Plaintiff
358 Fifth Avenue, Suite 1003
New York, NY 10003
(P) (212) 684-3933
(F) (212) 465-2192
rhantman@hantmanlaw.com
smovahed@hantmanlaw.com

11

# EXHIBIT A

# AGREEMENT

**THIS AGREEMENT** ("Agreement") is made and entered into as of the 27th day of December, 2012, by and between the individual Purchaser, **YAKIM MANASSEH JORDAN** ("YMJ"), and the Seller, **GEORGIA HEALTH AND ASSOCIATES, LLC** ("GHA"), and YJM and GHA shall collectively be referred to as the "Parties" hereunder.

## RECITALS

**WHEREAS,** GHA is the operator of a licensed Medicaid mental health clinic and treatment center, which is located at 1618 Thompson Avenue, East Point, Georgia 30344, with a Federal Tax Number 27-0550855 and a Medicaid Number 322486618A;

**WHEREAS,** Selester Stewart, Jr.("Stewart") is the one hundred percent (100%) owner of GHA and is the sole and Managing Member of GHA,

**WHEREAS,** Stewart as owner of GHA wishes GHA to enter into this Agreement to sell and transfer ownership of GHA to YMJ;

**WHEREAS,** YMJ seeks to purchase one hundred percent (100%) ownership of GHA;

**NOW, THERFORE,** inconsideration of the foregoing recitals and the mutual covenants contained herein, YMJ and GHA hereby agree as follows:

1. <u>Purchase Price.</u>

   The total purchase price to be paid by YMJ to GHA to acquire one hundred percent (100%) ownership of GHA is $ 250,000 ("Purchase Price"). The sale and transfer of GHA to YMJ shall become effective only when GHA has received the total Purchase Price from YMJ. ("Effective Date").

2. <u>Down Payment.</u>

   YMJ shall pay to GHA an initial installment Down Payment of $150,000 ("Down Payment") towards the Purchase Price, upon the signing of this Agreement. Such Down Payment shall be *non-refundable* to YMJ, unless GHA is subsequently determined to be in breach of a material representation or warranty which constitutes fraud in the inducement, then in such event only, GHA shall promptly refund the Down Payment to YMJ.

3. <u>YMJ Commencing Operations.</u>

   (a) YMJ shall be allowed by GHA, as of the Agreement date, to immediately commence referring new patients ("Referrals") for treatment through GHA. GHA shall make their existing offices available to YMJ at no additional expense to YMJ for this purpose.

   (b) GHA shall allow YMJ to employ at least two persons in GHA's offices, at YMJ's expense, for the purpose of coordinating the operations of YMJ and GHA with respect to all Referrals, and to undertake with GHA the treatment of each Referral.

   (c) GHA and YMJ shall within 30 days of the signing of this Agreement file the necessary forms for the change of ownership approval process with the appropriate state and federal

1

agencies overseeing the Medicaid payments made pursuant to this Agreement.

4. Billing and Collection.

   (a) YMJ shall be entitled to the fees charged to all Referrals, although the actual billing of all Referrals shall be rendered by GHA under its letterhead, and submitted by GHA to Medicaid for payment.

   (b) YMJ employees shall keep accurate records of all billings and report to GHA with a record of all billings for each Referral who is treated.    GHA shall make available to YMJ any consulting information, expertise, and knowledge in its possession, from time to time, which may assist YMJ in operations and the treatment and billing of Referrals.

   (c) All fees collected from Medicaid by GHA pursuant to this agreement shall be accounted for and reported to YMJ on a weekly basis, and shall belong to and constitute the revenues of YMJ ("Revenues").

   (d) Total Revenues derived from billings of all Referrals and paid by Medicaid shall be deposited into the GHA bank account. YMJ shall designate its attorney, Robert Seibel, as its agent for the sole purpose of transferring said funds to YMJ. GHA agrees to allow Mr. Seibel to be a signatory on the bank account or otherwise authorize Mr. Seibel for this sole purpose. No portion of the Revenues derived from Medicaid for billings of Referrals shall be retained by GHA or Stewart.

   (e) The provisions of this Paragraph 4 and Paragraph 3 above shall remain in effect only until such time as YMJ shall obtain its Medicaid License Number for purposes of operations, billing and collections, but in no event shall these provisions extend beyond six (6) months from the Effective Date of this Agreement without written consent of the parties.

   (f) Notwithstanding any language to the contrary contained herein, in the event YMJ's change of ownership is not approved by Medicaid, it shall be permitted by GHA to continue to operate under the provisions of Paragraphs 3 and 4 herein, until such time as YMJ recoups $300,000 in gross billings, at which point YMJ's operations will cease.

5. Second Installment Payment.

   A second installment payment of $ 100,000 towards the Purchase Price ("Second Payment") shall be paid by YMJ to GHA thirty (30) days after the date of this Agreement. This Second Payment can only be refunded to YMJ in the event of a GHA breach of a material representation or warranty hereunder that constitutes fraud in the inducement.

6. Taxes.

   (a) GHA shall have no liability for the payment of any federal, state, and city income taxes to be imposed upon the Revenues collected by YMJ herein. YMJ shall have the exclusive responsibility to file the appropriate tax returns for the period following the signing of this Agreement until the ownership of GHA is transferred to YMJ. YMJ shall timely pay all federal, state and city taxes which may be due and owed for the Revenues which they have received.

2

(b) GHA shall retain liability and be responsible for the payment of any federal, state or city taxes owed by GHA prior to the date of this Agreement, for the tax year 2012, or any prior year.

7. Medicaid Audit.

In the event of an audit of GHA by Medicaid, YMJ shall reimburse GHA for any fees and billings previously paid to YMJ by GHA, which Medicaid disallows. GHA shall provide YMJ with a complete report of the Medicaid audit with respect to YMJ Referrals. This section shall be further amplified by the language contained in Section 12 (a) herein.

8. Assets Purchased.

Upon the Effective Date, YMJ shall purchase and GHA shall sell and transfer to YMJ the following:

(a) One hundred percent (100%) ownership of GHA.

(b) Including but not be limited to: desks, chairs, filing cabinets, lighting fixtures, lamps, computers, systems, programs, databases, telecopier and copy machines, telephones, and any other office furnishings which are actually owned by GHA.

(c) Exclusive ownership of the name "Georgia Health and Associates, LLC" and any registered trademark and/or service mark of said name. YMJ shall have the right to use any such trademark and/or service mark of the name for usage throughout the State of Georgia, and anywhere else where permitted, for any other Medicaid treatment clinic to be owned and operated by YMJ.

(d) All bank accounts, financial books and records, confidential information, proprietary information, website and internet domain names, operating manuals and guides, telephone numbers, email addresses, fax numbers, advertising copy and all references, and any other intellectual property belonging to GHA.

(e) All GHA federal, state and city registrations, licenses and certifications including but not limited to:

1. Medicaid License Number 322486618A
2. Federal Employer Identification Number 27-0550855
3. CARF Re-Certification of GHA for one to three years commencing January 1, 2013.

9. Representations and Warranties.

GHA represents and warrants to YMJ as follows:

(a) GHA has been duly organized and is validly existing and in good standing under the laws of the State of Georgia.

(b) GHA is duly qualified, licensed and certified to do business, and, to the extent applicable, will be duly qualified, licensed and certified, in all jurisdictions which require such qualification to conduct the business to be conducted by GHA under this Agreement.

3

GHA warrants that it is a duly licensed Medicaid provider authorized through July 30, 2013, and is currently certified by CARF.

(c) GHA has the power and authority to enter into this Agreement and perform the obligations created by this Agreement

(d) This Agreement has been duly authorized by all necessary action on the part of GHA and its sole stockholder, Stewart, and has been executed and delivered by GHA. This is a valid and binding obligation of GHA and is enforceable in accordance with its terms.

(e) Neither the execution and delivery of this Agreement by GHA, nor compliance by it with any of the provisions hereof, will:

    1.  violate or conflict with any provision of the Certificate of Formation or the By-Laws of GHA;

    2.  violate or, alone or with notice or the passage of time, result in the breach or termination, or otherwise give any contracting party the right to terminate, or declare a default under, the terms of any contract or agreement to which GHA is a party or by which it may be bound;

    3.  violate any decree, order, injunction, judgment or award against, or binding upon, GHA; or

    4.  to the best of its knowledge, violate any law relating to GHA.

(f) Except as otherwise provided herein with respect to continued Medicaid licensing, and CARF re-certification, no other consents of federal, state and local governmental or other regulatory agencies, foreign or domestic, or of any other parties are required to be received by or on the part of GHA to enable it to enter into and carry out this Agreement and the transactions contemplated hereby, including without limitation, the transfer by GHA to YMJ of all GHA's one hundred percent (100%) ownership of its business and its rights, titles and interests in all of its assets.

(g) GHA has good title to its name, its Medicaid license and all of its intellectual property. GHA is free and clear of all actions, suits, proceedings or governmental investigations, claims, judgments, liens, debts, pledges, options, charges, restrictions, security interests, encumbrances or other rights of third parties, whether voluntarily incurred or arising by operation of law.

(h) No representation, warranty or statement made by GHA in this Agreement to YMJ and relating to the transactions contemplated hereby, contains any untrue statement of a material fact, or omits to state a fact necessary in order to make such representations, warranties or statements not materially misleading.

YMJ represents and warrants to GHA as follows:

4

(a) YMJ is an individual whose principal residence is in the State of New York.

(b) YMJ is duly qualified to do business, or to the extent applicable, will be duly qualified, in all jurisdictions which require such qualification to conduct the business to be conducted by GHA under this Agreement and thereafter.

(c) YMJ has the power and authority to enter into this Agreement and perform the obligations created by this Agreement.

(d) This Agreement has been duly authorized by YMJ and has been duly executed and delivered by him to GHA.

(e) Neither the execution and delivery of this Agreement by YMJ, nor compliance by him with any of the provisions hereof, will:

   1. violate or conflict with any provision of the Certificate of Formation or the By-Laws of GHA;

   2. violate or, alone or with notice or the passage of time, result in the breach or termination of, or otherwise give any contracting party the right to terminate, or declare a default under, the terms of any contract or agreement to which YMJ is a party or by which he may be bound;

   3. violate any decree, order, injunction, judgment or award against, or binding upon YMJ;

(f) Except as otherwise provided herein with respect to continued Medicaid licensing of GHA and CARF re-certification, no consents of federal, state and local governmental or other regulatory agencies, foreign or domestic, or of any other parties are required to be received by or on the part of YMJ to enable him to enter into and carry out this Agreement and the transactions contemplated hereby, including, without limitation, the purchase of one hundred percent (100%) ownership of GHA, and all rights, title and interests to GHA's assets.

(g) YMJ has adequate capital to finance the purchase and business of GHA as contemplated by this Agreement, and has adequate resources to fulfill his obligations hereunder.

10. Defense and Indemnity.

(a) YMJ shall individually defend, indemnify and hold GHA, and its officers, directors, members, owners, employees, agents, attorneys, representatives, affiliates, successors and assigns (collectively, an "Indemnified GHA Party") harmless from and against any and

5

all demands, claims, actions, causes of action, liabilities, suits, proceedings, judgments, investigations or inquiries, or any settlement thereto, and all related expenses, including, but not limited, to all litigation expenses (including reasonable attorney's fees and court costs) and settlement amount (collectively, "Losses"), that directly or indirectly arise from or are in connection with (i) the treatment of any Referrals while working together with GHA, prior to the Effective Date, (ii) the performance or nonperformance of any of the YMJ respective covenants, duties and/or obligations under this Agreement, or (iii) any misrepresentation and/or breach of a representation and/or warranty on the part of YMJ under this Agreement, except for Losses resulting from GHA's misconduct or covered by GHA's indemnity below.

(b) GHA shall defend, indemnify, and hold YMJ and his partners, associates, employees, agents, attorneys, representatives, affiliates, successors and assigns (collectively, an "Indemnfied YMJ Party") harmless from and against all Losses that directly arise from or are in connection with (i) the performance or nonperformance of GHA's covenants, duties and/or obligations under this Agreement, (ii) any misrepresentation and/or breach of a representation and/or warranty on the part of GHA under this Agreement, except for Losses resulting from YMJ's misconduct or covered by the YMJ indemnity above.

(c) Until the Effective Date, GHA shall retain complete responsibility and legal liability to Medicaid for the treatment by GHA and YMJ employees of all Referrals from YMJ. In the event any claim or demand is asserted by Medicaid against GHA pertaining to Referrals, GHA shall refer to the provisions of Section 10(a) herein.

11. Method of Asserting Claims.

In the event that any claim or demand for which YMJ or GHA, as the case may be (the "Indemnifying Party") would be liable to an Indemnified Party hereunder is asserted against or sought to be collected from an Indemnified Party by a third party, the Indemnified Party shall notify the Indemnifying Party promptly of such claim or demand, specifying the nature of such claim or demand and the amount or the estimated amount thereof to the extent then feasible (which estimate shall not be conclusive of the final amount of such claim and demand) (the "Claim Notice") The failure to timely give a Claim Notice promptly shall not relieve the Indemnifying Party of its obligations hereunder except to the extent it has been prejudiced thereby. The Indemnifying Party shall thereupon, at its sole cost and expense, defend the Indemnified Party against such claim or demand with counsel reasonably satisfactory to the Indemnified Party.

The Indemnified Party shall cooperate with the Indemnifying Party in connection. No claim or demand can be settled by the Indemnifying Party without the prior written consent of the Indemnified Party which may not be unreasonably withheld or delayed.

12. Confidentiality.

6

This Agreement and any information contained herein shall be held in strictest confidence by all the parties hereto and shall not be used or disclosed to any other person other than a party's officer, member, partner, legal counsel, on Court order, or by reason of a federal, state or local government request.

13. Other Actions.

No party hereto shall take any action, directly or indirectly, which damages the reputation of the other party hereto, or which reflects negatively upon GHA, Stewart or YMJ respectively.

14. Term.

The term of this Agreement commenced as of the date of its execution, as stated in the first paragraph of the Agreement, and, shall remain in full force and effect unless earlier terminated as follows:

(a) The parties may terminate this Agreement by mutual consent in writing at any time.

(b) YMJ may terminate this Agreement upon giving written notice to GHA, in the event GHA forfeits its Medicaid license prior to the Effective Date.

(c) YMJ may terminate this Agreement by giving written notice to GHA, in the event GHA fails to provide YMJ with written notification of the verbal approval of CARF re-certification.

(d) GHA can terminate this Agreement by giving written notice to YMJ, in the event YMJ fails to make the second payment due GHA within two (2) business days of the due date thereof.

15. General Provisions.

15.1 Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of all successors and permitted assigns of the parties.

15.2 Notices. All notices, requests, demands and other communications which may be given or are required to be given under this Agreement shall be in writing, shall be sent by (i) overnight receipted courier or delivery service. or (ii) by facsimile or email transmission, provided confirmation of receipt is obtained and shall be deemed given on the date of delivery or date of transmission. All notices shall be addressed as set forth below:

7

If to GHA:

Mr. Selester Stewart, Jr.
5240 Snapfinger Park Drive, Suite 140

Decatur, GA 300

Tel. (336) 399-2889
Email: drstewart@gahealthpartners.com


If to YMJ:

Mr.Yakim Manasseh Jordan
c/o Mr. Frank Juliano
708 Third Avenue, 6th Floor
New York, NY 10017
Tel. (212) 209-2912
Fax. (646) 502-8998

Email:  fj@prophetmanasseh.com


15.3 Governing Law.    In the event of a lawsuit arising out of this Agreement, it shall be governed by and construed in accordance with the laws of the State of North Carolina or New York,  depending upon the jurisdiction where such lawsuit is filed, applicable to contracts made and performed in such state.

15.4 Resolution of Disputes.

15.5 Headings.     The headings herein are for convenience or reference only, do not constitute a part of this Agreement, and shall not be deemed to limit or affect any of the terms or provisions  hereof.

15.6 Entire Agreement.     This Agreement constitutes the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, deal memorandums and understandings, both oral and written, express or implied, between the parties hereto concerning the subject matter of this Agreement.

15.7 Waiver and Amendment.     No waiver, amendment, modification or change of any provision of this Agreement shall be effective unless and until made in writing and signed by GHA and YMJ.   No waiver or forbearance by any party hereto of its right to enforce any provision of this Agreement shall be construed as constituting a continuing waiver or as a waiver in other instances.   The failure of any party to assert any of its right hereunder shall not constitute a waiver of any such rights.   No course of conduct or method of doing business shall modify or amend the terms hereof.

15.8 Severability.    If any provision of this Agreement shall be determined to be unenforceable to any extent, the remainder of this Agreement shall not be affected and shall continue to be valid and enforceable to the fullest extent permitted by law.    If any provision is held invalid as duration, scope, activity, or subject, such provision shall be construed by limiting and reducing it so as to be enforceable to the extent compatible with applicable law.


15.9 Counterparts.   This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

8

15.10 Cooperation. Each party hereto shall cooperate with the other party hereto and shall take such further action and shall execute and deliver such further documents as may be necessary or desirable in order to carry out the provisions and purposes of this Agreement.

15.11 Facsimile or Email Signatures. This Agreement shall become binding and enforceable upon a party at such time as a counterpart has been signed and transmitted either personally, via mail or delivery service, or via facsimile or email to the other party hereto. In the event of transmittal by facsimile or email, to become effective a return receipt of transmission must be received by the sender.

15.12 Survival of Terms All terms, conditions, obligations and provisions capable of surviving the termination or expiration of this Agreement shall so survive.

15.13 Representation by Counsel; Interpretation. The parties acknowledge that they have been represented by counsel in connection with this Agreement and the transactions contemplated hereby. Accordingly, any rule or law or any legal decision that would require the interpretation of any claimed ambiguities in this Agreement against the party that drafted it has no application and is expressly waived by the parties. The provisions of this Agreement shall be interpreted in a reasonable manner to give effect to the intent of the parties hereto.

**SIGNATURE PAGE ATTACHED AS PAGE 10**

# SIGNATURE PAGE

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date hereof.

GEORGIA HEALTH AND ASSOCIATES, LLC

By _____
  Selester Stewart, Jr., Managing Member

DATE: _____12/27/12_____

YAKIM MANASSEH JORDAN

_____
  Yakim Manasseh Jordan

DATE;_____

10

# SIGNATURE PAGE

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date hereof.

**GEORGIA HEALTH AND ASSOCIATES, LLC**

By _____

       Selester Stewart, Jr., Managing Member

DATE: _____

**YAKIM MANASSEH JORDAN**

Yakim Manasseh Jordan

DATE: _12/27/12_____

10

# EXHIBIT B

**Manasseh Jordan Ministries**
708 3rd Ave 6th Fl
New York, NY 10017
(800)352-3407

**Bank of America**
1 Exchange Pl
Jersey City, NJ 07302-3905
800-841-4000

1843

DATE          *12/28/2012*
Reference:

PAY          **HOLTON LAW FIRM, PLLC TRUCT ACCOUNT**          $  **150,000.00**

*ONE-HUNDRED-FIFTY-THOUSAND  AND 00/100*************************************_  DOLLARS

TO THE          **HOLTON LAW FIRM, PLLC TRUCT ACCO**
ORDER
OF

Memo    GHA sales

⑇⑇001843⑇ ⑇021200339⑇:3810190 46 282

Manasseh Jordan Ministries          1843

Manasseh Jordan Ministries          1843

# EXHIBIT C


## Camille Richins - Georgia Health Associates & Associates, LLC

**From:** Camille Richins
**To:** gahealthassociates@gmail.com; gdudley@gahealthpartners.com
**Date:** 6/26/2013 6:25 PM
**Subject:** Georgia Health Associates & Associates, LLC
**CC:** Copeland, Lynn; Feimster, Judy; Ice, Catherine; Sperbeck, Melissa

Hello Dr Stewart,

We were notified that at the APS audit held last week you informed DBHDD Regional Office staff that you will be closing your doors on June 30, 2013 and that you will transition the remaining consumers to other providers. Please provide formal notification of this to DBHDD so we can appropriately close you out in our system and notify DCH of your closure. Please submit this notification on company letterhead prior to June 30, 2013.

You may send via email to me or mail to:

**Department of Behavioral Health and Developmental Disabilities**
**Office of Provider Network Management**
**2 Peachtree Street, NW**
**Suite 23.247**
**Atlanta, GA 30303-3142**


Thank you,


Camille Richins
Office of Provider Network Management
Direct Phone: 404.657.6431
Direct Fax: 770.342.7162

# EXHIBIT D

# Georgia Health & Associates, LLC

*"Where We Are Shaping Lives & Building Futures"*

c/o 5240 Snapfinger Park Drive, Suite 140 • Decatur, Georgia 30035
Office 678-389-4836 • Fax 404-393-1170

July 2, 2013

Dept. of Behavioral Health and
 Developmental Disabilities (DBHDD)
Judy Feimster
2 Peachtree Street NW
Atlanta, GA

Re:  Georgia Health & Associates

Dear Ms. Feimster:

I, Dr. Selester Stewart, Jr., along with my management team have decided due to the recent cuts
in services to restructure Georgia Health & Associates.

In preparation of this restructuring, we have discharged all consumers and will not be applying
for a FY14 contract with the Department of Behavioral Health and Developmental Disabilities
(DBHDD) at this time.

In addition, we would like to take this opportunity to thank you for allowing us to provide
services to the mental/behavioral health population in the state of Georgia.

Respectfully,

Selester Stewart, Jr., CEO

Cc: Camille Richins; Catherine Ice